UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID CORNELL,

     Plaintiff,

    -v-      5:20-CV-1283

THE VILLAGE OF CLAYTON,
JOSHUA DAVID, SHELDON
MOOT, KEVIN DIBBLE, and
SCOTT WHITMORE

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

THE LAW OFFICE OF    FRED B. LICHTMACHER, ESQ.
 FRED LICHTMACHER P.C.
Attorneys for Plaintiff
116 West 23rd Street, Suite 500
New York, NY 10011

HALPERIN & HALPERIN, P.C.  STEVEN T HALPERIN, I, ESQ.
Attorneys for Plaintiff
18 E. 48th Street, Suite 1001
New York, NY 10017

SUGARMAN LAW FIRM LLP   PAUL V. MULLIN, ESQ.
Attorneys for Defendants the Village
 of Clayton, Joshua David,
 and Sheldon Moot
211 West Jefferson Street
Syracuse, NY 13202

HON. LETITIA JAMES    AIMEE COHEN, ESQ.
New York State Attorney General Ass't Attorney General

Attorneys for Defendants Kevin
    Dibble, and Scott Whitmore
300 South State Street, Suite 300
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## **DECISION and ORDER**

## I. **INTRODUCTION**

On October 18, 2020, David Cornell ("Cornell" or "plaintiff") filed this

action against defendants the Village of Clayton (the "Village"), Clayton

Police Officer Joshua David ("Officer David"), and Clayton Police Officer

Sheldon Moot ("Officer Moot") (collectively the "Village defendants").[1]  Dkt.

No. 1.  On February 3, 2021, plaintiff amended his complaint to add New

York State Trooper Kevin Dibble ("Trooper Dibble"), and New York State

Trooper Scott Whitmore ("Trooper Whitmore") (collectively the "State

defendants") as defendants.  Dkt. No. 25.  On February 28, 2022, plaintiff

filed a second amended complaint, correcting the spelling of Trooper

Whitemore's name.[2]  Dkt. No. 60.  On September 6, 2022, plaintiff filed a

---

[1]  Cornell's complaint also named the Village of Clayton Police Department and Unidentified
New York State Troopers as defendants.  Dkt. No. 1.  Plaintiff's first amended complaint terminated
the Village of Clayton Police Department as a defendant and named New York State Troopers Kevin
Dibble and Scott Whitmore as defendants.  *See* Dkt. Nos. 23, 24, 25.

[2]  Cornell's first amended complaint incorrectly spells Trooper Whitemore's last name as
"Wetmore."  *See* Dkt. No. 25.

third amended complaint, correcting the date of the events underlying the dispute.  Dkt. No. 69.

Cornell's seven-count third amended complaint asserts 42 U.S.C. § 1983 claims against the Trooper defendants for excessive force (Count One) and failure to intervene to prevent the use of excessive force (Count Two).  Dkt. No. 69.  Plaintiff's third amended complaint also asserts § 1983 claims against Officer David and Officer Moot (collectively the "Village officers") for excessive force (Count One), failure to intervene to prevent the use of excessive force (Count Two), and false arrest (Count Six).[3]  *Id.*  Finally, plaintiff's third amended complaint asserts common law claims against the Village under a *respondeat superior* theory for battery (Count Four), assault (Count Five), and false imprisonment (Count Seven).[4]  *Id.*

---

[3]  Cornell's third amended complaint asserts this claim against "the individual defendants" yet only specifically alleges that he was falsely arrested by the Village officers.  Compl. ¶¶ 83–89.  The Trooper defendants argue that plaintiff cannot now allege a claim for false arrest against them.  In any event, plaintiff's opposition does not address the Trooper defendants' argument.  As a result, plaintiff's false arrest claim, to the extent is asserted against the Trooper defendants, is deemed abandoned.  *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).  Even if not abandoned, the Trooper defendants would be entitled to summary judgment due to the existence of probable cause, as discussed *infra*.

[4]  Cornell's third amended complaint originally asserted a claim for denial of timely and adequate medical care (Count Three) against the individual defendants.  *See* Compl. ¶¶ 65–70.  On February 15, 2023, plaintiff stipulated to the discontinuance of this claim.  *See* Dkt. Nos. 81, 82.

On February 21, 2023, the Trooper defendants moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56.  Dkt. No. 83.  On the same day, the Village defendants also moved for summary judgment under Rule 56.  Dkt. No. 84.  Both motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  <u>BACKGROUND</u>[5]

In the early hours of July 20, 2019, Cornell was at the Lost Navigator, a bar in the Village of Clayton.  Village Defs.' Statement of Material Facts ("Village Facts"), Dkt. No. 84-28 ¶¶ 5, 10.  While at the bar, plaintiff became involved in a physical altercation with non-party Christopher Rexford ("Rexford").  *Id.* ¶ 16; Trooper Defs.' Statement of Material Facts ("Trooper Facts"), Dkt. No. 83-1 ¶ 13.  Afterwards, plaintiff was escorted out of the bar by the bartender, Rexford, and a few other bar patrons.  Village Facts ¶¶ 17–19; Trooper Facts ¶ 14.  In order to remove plaintiff from the bar, Rexford pushed plaintiff out of the front entrance.  Village Facts ¶¶ 18–19; Trooper Facts ¶ 14.  As a result of the push, plaintiff fell on the sidewalk, hitting his knees, head, and ribs.  Village Facts ¶¶ 21–24; Trooper Facts ¶ 15.

---

[5] The following facts are drawn from the parties' statements of material facts to the extent those facts are well-supported by pinpoint citations to the record.  Disputed facts are flagged and described from each party's point of view.

Cornell called 911 from the sidewalk outside of the Lost Navigator. Village Facts ¶ 28; Trooper Facts ¶ 16.  Officers David and Moot of the Clayton Police Department were dispatched to the bar.  Village Facts ¶¶ 29–30; Trooper Facts ¶ 18.  When the Village officers arrived, they spoke with plaintiff outside of the bar.  Trooper Facts ¶¶ 27–28.  Plaintiff told the Village officers that he had been thrown out of the bar by the bartender and some bar patrons.  Village Facts ¶¶ 51–54.  Plaintiff also informed the Village officers that he sustained injuries as a result of being pushed out of the bar. *Id.* ¶¶ 51–55.  Throughout this conversation, the Village officers observed that plaintiff appeared to be impaired by alcohol.  *Id.* ¶¶ 57–58.

After a couple of minutes, Rexford exited the Lost Navigator.  Trooper Facts ¶ 30.  Rexford approached the Village officers and began speaking with them.  *Id.* ¶ 31.  Rexford then spoke with Officer David separately.  *Id.* ¶ 32; Village Facts ¶ 62.  Rexford told Officer David that plaintiff had been bothering him, his wife, and their friends at the bar, which ultimately led to a physical altercation.  Village Facts ¶ 65; Trooper Facts ¶ 33.  Rexford also told Officer David that he was the one who pushed plaintiff out of the bar. Village Facts ¶ 64.

New York State Troopers Whitmore and Dibble were also dispatched to the Lost Navigator as backup for the Village officers.  Village Facts ¶ 40; Trooper Facts ¶ 36.  The Trooper defendants arrived approximately three minutes after the Village officers arrived.  Trooper Facts ¶ 34.  Upon their arrival, Trooper Whitmore remained with plaintiff while Trooper Dibble spoke with other bar patrons and Officer David continued to speak with Rexford.  *Id.* ¶ 39; Ex. F to Cowan Decl., Dkt. No. 83 ("Video") at 1:55:06–01:56:39.  The Trooper defendants also observed that plaintiff appeared to be impaired by alcohol.  Village Facts ¶¶ 59–61.

After several minutes of conversation with Cornell and Rexford, the Village officers asked plaintiff to leave the area of the Lost Navigator.  Trooper Facts ¶ 42.  Plaintiff complied with the order and left the area of the bar.  Village Facts ¶¶ 82–83.  Plaintiff walked a couple of blocks towards his campsite.  *Id.* ¶¶ 83–84.  However, five minutes later, plaintiff returned to the area of the bar.  *Id.* ¶ 84.

From across the street, Cornell spoke to one of the officers.  Village Facts ¶ 85.  Plaintiff told the officer that he was hurt and asked if someone could give him a ride to his campsite.  *Id.* ¶¶ 86–89.  The officer responded in the negative and ordered plaintiff to leave the area.  *Id.* ¶¶ 89, 91.  Plaintiff turned and walked away from the officers.  Trooper Facts ¶¶ 51–52.  Before plaintiff reached the other side of the street, he turned around and approached the officers again.  *Id.* ¶ 52.  The officers met plaintiff in the middle of the street and walked with him down the street towards the direction of the campsite.  *Id.* ¶¶ 53, 54; Village Facts ¶ 98.  The officers then began walking back towards the area of the Lost Navigator.  Village Facts ¶ 99; Trooper Facts ¶ 59.

Cornell turned around again and started walking towards the area of the Lost Navigator.  Village Facts ¶ 99; Trooper Facts ¶ 60.  The officers turned around and spoke with plaintiff in the street.  Village Facts ¶ 100; Trooper Facts ¶ 61.  Plaintiff began walking away from the bar, and the officers returned to the sidewalk in front of the bar.  Village Facts ¶ 101; Trooper Facts ¶ 64.

Cornell stopped walking towards the direction of his campsite and turned back towards the Lost Navigator.  Village Facts ¶¶ 102–03; Trooper Facts ¶ 65.  The officers walked towards the plaintiff and told him that he was under arrest and to put his hands behind his back.  Village Facts ¶¶ 102–03, 105; Trooper Facts ¶¶ 66–67.  Plaintiff turned to the right and started walking behind a sedan parked in front of the bar.  Village Facts ¶ 110; Video at 2:04:50–2:04:55.  As the officers approached plaintiff, he either turned, or was turned, so that he could be handcuffed.  Village Facts ¶ 112.  According to the defendants, plaintiff attempted to pull away from the officers after his hands were behind his back.  *Id.* ¶ 113; Trooper Facts ¶ 69.

Cornell's chest was then leaned against the trunk of the sedan in order to be handcuffed.  Village Facts ¶ 114; Trooper Facts ¶ 70.  According to plaintiff, he was forcefully slammed onto the trunk with so much force that his feet left the ground and his face hit the trunk of the car.  Pl.'s Response to Village Facts, Dkt. No. 87-1 ¶¶ 114, 122–24, 126.  However, the defendants assert that plaintiff was not slammed or smashed into the sedan.  Village Facts ¶ 116; Trooper Facts ¶¶ 70–71.

After Cornell was handcuffed, his chest was lifted from the trunk of the sedan. Village Facts ¶ 130. As plaintiff was being lifted, he fell onto the ground. *Id.* Plaintiff maintains that his fall was the result of being purposely dropped. Pl.'s Response to Village Facts ¶¶ 131–132. In contrast, the defendants assert that plaintiff was not purposely dropped or pushed onto the ground. Village Facts ¶¶ 131–32; Trooper Facts ¶¶ 77–78.

The Village officers lifted Cornell up off of the ground and held onto his arms. Village Facts ¶ 133; Trooper Facts ¶ 79. The Village officers began escorting plaintiff to the Clayton Police Department patrol vehicle. Village Facts ¶ 134; Trooper Facts ¶ 80. As plaintiff was being escorted, he fell forward onto the ground. Village Facts ¶ 135; Trooper Facts ¶ 83. The Village officers placed plaintiff in a seated position on the ground. Village Facts ¶ 143; Trooper Facts ¶ 84. Plaintiff was then lifted up and assisted into the back of the police vehicle. Village Facts ¶ 144; Trooper Facts ¶ 86.

Cornell was taken to the Clayton Police Department. Village Facts ¶ 147; Trooper Facts ¶ 97. An ambulance from the Thousand Islands Emergency Rescue Services ("TIERS") responded to the police department to evaluate plaintiff. Village Facts ¶¶ 149–50. The TIERS records provide that:

> Patient is talking full sentences, shows no signs of respiratory distress, states no difficulty breathing . . . skin is intact, warm and dry—except for a laceration of approximately an each across the bridge of his nose and small hematoma on his right upper forehead. Patient admits to alcohol use this evening, unknown how much, is answering all questions appropriately, is aware of self, date, time and events, is following all commands . . . . Used a 4x4 to wipe off excess blood and examine for further injuries, none found. Patient stated he did not want to go to the hospital, felt he did not need it . . . . Patient seemed competent due to answering all questions quickly and appropriately, no neuro deficits were present.

Ex. O to Mullin Decl., Dkt. No. 83 at 3; *see also* Village Facts ¶ 151; Trooper Facts ¶ 102.  Thereafter, plaintiff signed a refusal of medical treatment form. Village Facts ¶ 152; Trooper Facts ¶ 105.

Cornell was charged with disorderly conduct in violation of Penal Law § 240.20(6), obstructing government administration in violation of Penal Law § 195.05 and resisting arrest in violation of Penal Law § 205.30.  Village Facts ¶ 153; Trooper Facts ¶¶ 106–09.  Plaintiff was arraigned in the Town of Orleans Justice Court. Village Facts ¶ 154; Trooper Facts ¶ 110.  After his arraignment, plaintiff was taken to the Jefferson County jail.  Village Facts ¶ 156; Trooper Facts ¶ 113.  Plaintiff was released after a couple of hours. Village Facts ¶¶ 157–58; Trooper Facts ¶ 115.  After his release, plaintiff went to the River Hospital emergency room.  Village Facts ¶ 159; Trooper

Facts ¶ 116. However, plaintiff left approximately two hours later without

being seen by a medical provider. Village Facts ¶ 159; Trooper Facts ¶ 117.

Plaintiff did not seek any further medical treatment until the next day or the

day after. Village Facts ¶ 160; Trooper Facts ¶ 119. Plaintiff's criminal

charges were ultimately adjourned in contemplation of dismissal. Village

Facts ¶ 161; Trooper Facts ¶ 121.

## III.  **LEGAL STANDARD**

The entry of summary judgment is warranted "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is

material for purposes of this inquiry if it "might affect the outcome of the suit

under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute of material fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a

court must resolve any ambiguities and draw all inferences from the facts in

a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F.

Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted). Summary judgment is

inappropriate where a "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV.  DISCUSSION

There are two motions pending: the Village defendants' motion for summary judgment; and the Trooper defendants' motion for summary judgment.  *See* Dkt. Nos. 83, 84.

### A.  Threshold Matters

Before turning to the merits of the pending motions, there are a few threshold issues that require attention.

#### 1.  The Trooper Defendants' Statement of Facts

To begin with, the properly supported material facts set forth in the Trooper defendants' Statement of Material Facts will be deemed admitted. This is so because Cornell has failed to properly dispute the facts asserted by the Trooper defendants.

Pursuant to Local Rule of the Northern District of New York ("Local Rule") 56.1(b), "a party opposing a motion for summary judgment must admit or deny each paragraph of the movant's statement of material facts." *Lee v. City of Troy*, 520 F. Supp. 3d 191, 198 (N.D.N.Y. 2021).  "This is not just a *pro forma* requirement." *LaFever v. Clarke*, 525 F. Supp. 3d 305, 320 (N.D.N.Y. 2021) (citing *Frantti v. New York*, 414 F. Supp. 3d 257, 284 (N.D.N.Y. 2019)).

"To the contrary, this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties." *Frantti*, 414 F. Supp. 3d at 284 (cleaned up).

"A proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'" *LaFever*, 525 F. Supp. 3d at 320 (citation omitted). To that end, the non-movant's response "must (1) mirror the movant's Statement of Material Facts by (2) admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs with (3) a specific citation to the record where the factual issue arises." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 724, (N.D.N.Y. 2020) (cleaned up).

Cornell has not complied with Local Rule 56.1(b). First, plaintiff has only responded to a portion of the Trooper defendants' Statement of Material Facts. *See* Pl.'s Response to Trooper Facts, Dkt. No. 88-1. Second, the responses plaintiff has made do not correspond to the facts asserted by the Trooper defendants. *See id.* As a result, the properly supported facts set forth in the Trooper defendants' Statement of Material Facts shall be deemed

admitted for the purpose of assessing the Trooper defendants' motion for summary judgment.

### 2.  **The Village Defendants' Statement of Facts**

Cornell has also failed to properly dispute many of the facts asserted by the Village defendants.  In particular, several of plaintiff's responses to the Village defendants' Statement of Material Facts do not contain an admission or a denial.  *See* Pl.'s Response to Village Facts.  This is not in compliance with Local Rule 56.1(b).  As noted *supra*, Local Rule 56.1(b) requires the non-movant to admit or deny the movant's assertions.  *See LaFever*, 525 F. Supp. 3d at 321.  Thus, the Village defendants' properly supported facts, of which plaintiff has failed to appropriately respond to, shall be deemed admitted for the purpose of evaluating the Village defendants' motion for summary judgment.

### 3.  **The Video Evidence**

Lastly, because the defendants rely heavily upon video footage of the incident taken from the front of the Lost Navigator, a discussion as to how to properly consider video evidence is warranted.

"As the Supreme Court has made clear, video evidence must be considered in determining whether any material facts genuinely need to be tried." *Moore v. Keller*, 498 F. Supp. 3d 335, 351 (N.D.N.Y. 2020) (citing *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007)).  "However, 'the mere existence of a

videotape in the record depicting some or all of the events in dispute will not

*always* be dispositive at the summary judgment stage.'"  *Id.* (quoting *Hulett v.*

*City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017)).  Instead, the

appropriate course of action is to permit the jury an opportunity to resolve

the parties' competing versions of events, in conjunction with the video,

through the ordinary fact-finding processes in which juries engage.  *Hulett*,

253 F. Supp. 3d at 482.  Therefore, the video footage "will be considered and

carefully reviewed, but interpretation of the events is most likely

appropriately reserved for the triers of fact."  *Wilkinson v. Lewis*, 289 F.

Supp. 3d 371, 379 (N.D.N.Y. 2018).

### B.  <u>Motions for Summary Judgment</u>

Cornell's third amended complaint asserts § 1983 claims against the

Village officers and Trooper defendants for excessive force (Count One) and

failure to intervene to prevent the use of excessive force (Count Two).  Compl.

¶¶ 52–64.  Plaintiff's third amended complaint also asserts a § 1983 claim

against the Village officers for false arrest (Count Six).  *Id.* ¶¶ 83–89.  Lastly,

plaintiff's third amended complaint asserts common law claims against the

Village under a *respondeat superior* theory for battery (Count Four), assault (Count Five), and false imprisonment (Count Seven).  *Id.* ¶¶ 71–77, 90–96.

### 1. **Excessive Force** (Count One)

First, Cornell's third amended complaint asserts an excessive force claim under § 1983 against the Village officers and the Trooper defendants.  Compl. ¶¶ 52–57.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest."  *Hulett*, 253 F. Supp. 3d at 491 (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)).  "To succeed on a § 1983 excessive force claim, a plaintiff must show that the defendant's use of force was 'objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *LaFever*, 525 F. Supp. 3d at 331 (quoting *Hulett*, 253 F. Supp. 3d at 491).  "If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."  *Hulett*, 253 F. Supp. 3d at 491.

"This 'objective reasonableness' inquiry is 'necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *LaFever*, 525 F. Supp. 3d at 331 (quoting

*Hulett*, 253 F. Supp. 3d at 491).  Thus, review of an excessive force claim is "guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"Importantly, a court must evaluate the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hulett*, 253 F. Supp. 3d at 491 (cleaned up).  "In so doing, it is important to make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*  "Accordingly, police receive a fairly wide zone of protection in close cases involving potential danger, emergency conditions, or other exigent circumstances." *Id.*  "However, 'granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.'" *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

### a. **Village Defendants**

The Village defendants assert that they are entitled to summary judgment on Cornell's excessive force claim because the video footage of the incident conclusively demonstrates that the Village officers did not subject plaintiff to excessive force.  Village Defs.' Mem., Dkt. No. 84-29 at 22–31.[6]  According to the Village defendants, the footage directly contradicts plaintiff's allegations that the Village officers: (1) twisted his arms by lifting them upwards while they were behind his back; (2) slammed him onto the trunk of the sedan with so much force that his feet left the ground and his face hit the trunk of the car; and (3) purposely dropped him onto the ground.  *See id.*; *see also* Compl. ¶ 54.

Upon review, the video footage does not conclusively establish that the force used by the Village officers was objectively reasonable under the circumstances.  The footage is of relatively low quality, there is no accompanying audio, and the footage shows the incident from only one angle and at a distance.  As a result, it is difficult to discern from the footage the amount of force used by the Village officers.  Therefore, the appropriate course of action is to permit a jury the opportunity to resolve the parties' competing versions of events in conjunction with the footage.  Accordingly,

---

[6] Pagination corresponds to CM/ECF.

the Village defendants' motion for summary judgment with respect to

plaintiff's excessive force claim shall be denied.[7]

### b. **Trooper Defendants**

The Trooper defendants assert that they are entitled to summary

judgment on Cornell's excessive force claim because the video footage of the

incident clearly establishes that they did not use excessive force.  Trooper

Defs.' Mem. at 18–23.  In the Trooper defendants' view, the footage shows

that Trooper Dibble had no physical contact with plaintiff, and the only

physical contact Trooper Whitmore had with plaintiff "is perhaps briefly

grasping onto his left arm for mere seconds while Officers David and Moot

attempted to handcuff him while [p]lainitff resisted arrest."  *Id.*

Viewing the facts most favorably to Cornell, the Trooper defendants'

argument must be rejected.  Due to the video footage's low quality and

display of the incident from only one angle and at a distance, it is difficult to

ascertain the Trooper defendants' involvement in plaintiff's arrest and the

amount of force, if any, used by them.  As a result, triable issues of fact

---

[7] The Village defendants argue in the alternative that they are entitled to qualified immunity because no reasonable factfinder could conclude that the Village officers' conduct was objectively unreasonable.  Village Defs.' Mem. at 17.  This argument must be rejected.  The Village defendants have not established that the force used by the Village officers was objectively reasonable under the circumstances.  *See Baker v. City of N.Y.*, 551 F. Supp. 3d 258, 268 (S.D.N.Y. 2021) (noting that where there are questions of material fact as to the reasonableness of the force used, summary judgment on the ground of qualified immunity is not appropriate).

remain as to the degree of force employed by the Trooper defendants and the reasonableness of their conduct.  Accordingly, the Trooper defendants' motion for summary judgment on plaintiff's excessive force claim shall be denied.[8]

### 2.  **Failure to Intervene** (Count Two)

Second, Cornell's third amended complaint asserts a failure to intervene claim under § 1983 against the Village officers and the Trooper defendants. Compl. ¶¶ 52–57.

"Police officers 'have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" *Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Smith v. Sawyer*, 435 F. Supp. 3d 417, 438 (N.D.N.Y. 2020) (citing *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016)).

To succeed on a failure to intervene claim, a plaintiff must demonstrate that: (1) the defendant had a realistic opportunity to intervene and prevent

---

[8] The Trooper defendants argue that Trooper Whitmore is nonetheless entitled to qualified immunity.  Trooper Defs.' Mem. at 23–25.  Because it is difficult to determine from the video footage the extent of Trooper Whitmore's involvement in Cornell's arrest, concluding that Trooper Whitmore is entitled to qualified immunity at this stage would be inappropriate.

the harm; (2) a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated; and (3) the defendant did not take reasonable steps to intervene. *Wagner v. Hyra*, -- F. Supp. 3d--, 2023 WL 2533980, at *8 (N.D.N.Y. Mar. 16, 2023) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)). "[T]he officer faulted for failing to intervene must have had 'a realistic opportunity to intervene to prevent the harm from occurring.'" *Martinez*, 564 F. Supp. 3d at 106 (quoting *Branen*, 17 F.3d at 557). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Branen*, 17 F.3d at 557 (citing *O'Neill,* 839 F.2d at 11–12).

### a. **<u>Village Defendants</u>**

The Village defendants assert that they are entitled to summary judgment on Cornell's failure to intervene claim because the video footage of the incident demonstrates that the Village officers did not have a realistic opportunity to intervene and prevent the use of excessive force. Village Defs.' Mem. at 31–32.

Viewing the facts in the light most favorable to Cornell, the video footage does not conclusively establish that the Village officers did not have a

realistic opportunity to intervene.  A reasonable juror could view the footage

and conclude that the Village defendants had sufficient time to intercede and

prevent the use of force.  For this reason, the Village defendants' motion for

summary judgment with respect to plaintiff's failure to intervene claim shall

be denied.[9]

### b.  <u>Trooper Defendants</u>

The Trooper defendants first assert that Cornell's failure to intervene

claim must be dismissed because plaintiff "cannot both claim that the

Trooper [d]efendants used excessive force and failed to prevent the use of

excessive force."  Trooper Defs.' Mem. at 27.

The Trooper defendants' argument must be rejected.  While "individual

law enforcement officers may not be held liable for failure to intervene where

they are liable under a direct theory of participation, plaintiffs are permitted

to plead in the alternative."  *Rizk v. City of N.Y.*, 462 F. Supp. 3d 203, 226

(E.D.N.Y. 2020); *see also Durr v. Slator*, 558 F. Supp. 3d 1, 26 (N.D.N.Y.

2021).  Indeed, "district courts have allowed excessive force and failure to

intervene claims to proceed in the alternative beyond the summary judgment

stage."  *Franco v. City of Syracuse*, 2019 WL 1410348, at *4 (N.D.N.Y. Mar.

---

[9]  The Village defendants also assert that Cornell's failure to intervene claim should be dismissed because there was no underlying constitutional violation.  Village Defs.' Mem. at 31. Because plaintiff's excessive force remains for trial, this argument fails.

28, 2019) (citing *Buchy v. City of White Plains*, 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015)).  Thus, Cornell's failure to intervene claim will not be dismissed on this basis.

Next, the Trooper defendants argue that Cornell cannot demonstrate that they had a reasonable opportunity to intervene during the "extremely brief" period of time in which force was used.  Trooper Defs.' Mem. at 29–30.  In support of this argument, the Trooper defendants maintain that the entire arrest took approximately one minute.  *Id.* at 29.

This argument also fails.  Viewing the facts most favorably to Cornell, a reasonable jury could conclude that the Trooper defendants had a realistic opportunity to intervene and prevent the use of force.  As a result, the Trooper defendants' motion for summary judgment on plaintiff's failure to intervene claim shall be denied.[10] [11]

---

[10]  The Trooper defendants also argue that Cornell has failed to "show an underlying constitutional violation."  Trooper Defs.' Mem. at 27.  Plaintiff's excessive force claim remains for trial.  As such, the Trooper defendants' argument must be rejected.

[11]  The Village defendants maintain that they are nevertheless entitled to qualified immunity "because their alleged failure to intercede was under circumstances making it objectively reasonable for them to believe that the Clayton Officers' conduct did not violate [p]laintiff's rights."  Trooper Defs.' Mem. at 30–31.  Because there are disputed issues of material fact as to the force used, the Trooper defendants' argument fails.

### 3.  **Battery and Assault** (Counts Four & Five)

Cornell's third amended complaint asserts claims for battery and assault under New York law against the Village under a *respondeat superior* theory. Compl. ¶¶ 71–82.

"Essentially, the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law." *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) (citing *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order)); *see also Hulett*, 253 F. Supp. 3d at 491.  Indeed, except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical.  *Lee*, 520 F. Supp. 3d at 208 (citing *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 326 (W.D.N.Y. 2018)).

As determined *supra*, Cornell's excessive force claim under § 1983 shall remain for trial.  For the same reasons set forth with respect to plaintiff's excessive force claim, plaintiff's battery and assault claims against the Village survive summary judgment.  *See Rizk*, 462 F. Supp. 3d at 228–29

(E.D.N.Y. 2020).  Accordingly, the Village defendants' motion for summary

judgment on plaintiff's battery and assault claims shall be denied.[12]

### 4. **False Arrest and False Imprisonment** (Counts Six & Seven)

Cornell's third amended complaint asserts a false arrest claim against the

Village officers.  Compl. ¶¶ 83–89.  Plaintiff's third amended complaint also

asserts a false imprisonment claim under New York law[13] against the

Village.  *Id.* ¶¶ 90–96.

"A § 1983 false arrest claim is grounded in the Fourth Amendment right of

an individual to be free from unreasonable seizures." *LaFever*, 525 F. Supp.

3d at 329 (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "To

establish a claim under § 1983 for false arrest a plaintiff must show that: (1)

the defendant intended to confine the plaintiff; (2) the plaintiff was conscious

of the confinement; (3) the plaintiff did not consent to the confinement; and

---

[12]  Cornell's assault and battery claims are likely barred by the applicable one-year statute of limitations for intentional torts.  *See* N.Y. C.P.L.R. § 215(3); *see also Moore*, 498 F. Supp. 3d at 347. A statute of limitations defense is an affirmative defense, and as such must be affirmatively stated in responding to a pleading.  *See* Fed. R. Civ. P. 8(c).  The Village defendants' answer to plaintiff's third amended complaint appears to assert the defense.  *See* Dkt. No. 73.  Nevertheless, the Village defendants have not argued for the defense in their memorandum.

[13]  Under New York law, the tort of false arrest is "synonymous" with the tort of false imprisonment.  *Williams v. Olsen*, 638 F. Supp. 3d 204, 223 (N.D.N.Y. 2022) (citations omitted).  As such, the elements for a false imprisonment claim under New York law are the same as a claim for false arrest claim under § 1983.  *Jackson ex rel. Jackson v. Suffolk Cnty.*, 87 F. Supp. 3d 386, 403 (E.D.N.Y. 2015) (citing *Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991)).

(4) the confinement was not otherwise privileged." *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013) (citation omitted).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." *Hulett*, 253 F. Supp. 3d at 494 (quoting *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015)). "A police officer has probable cause to arrest when he has knowledge of reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* at 494 (cleaned up). "The test for probable cause is an objective one and 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" *Id.* (quoting *Yorzinski v. City of N.Y.*, 175 F.Supp.3d 69, 75 (S.D.N.Y. 2016)). "The existence of probable cause is a complete defense, for which the defendant bears the burden of proof." *Pacini v. Vill. of N.Y. Mills*, 2018 WL 2108191, at *3 (N.D.N.Y. May 7, 2018) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010)).

The Village defendants assert that they are entitled to summary judgment on Cornell's false arrest claim because the Village officers had probable cause to arrest plaintiff for three separate offenses: disorderly conduct in violation

of New York Penal Law § 240.20(6); obstructing governmental administration in violation of New York Penal Law § 195.05; and resisting arrest in violation of New York Penal Law § 205.30.  Village Defs.' Mem. at 10–22.

A person is guilty of disorderly conduct in violation of § 240.20(6) "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." *Kass v. City of N.Y.*, 864 F.3d 200, 211 (2d Cir. 2017) (cleaned up).  "This offense consists of the following elements: the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm." *Id.* (citation omitted).

Measured against this standard, the Village officers had probable cause to arrest Cornell for disorderly conduct in violation of § 240.20(6).  First, multiple people were congregated outside of the Lost Navigator throughout the entire incident, from the time the Village officers arrived, to the time plaintiff was arrested and removed from the scene.[14]  Village Facts ¶¶ 47–49,

---

[14]  New York courts have defined "congregating with other persons" as a gathering of at the very least, three persons at a given time and place.  *Kass*, 864 F.3d at 211 (cleaned up).

106–08; Video at 01:50:00–02:08:11.  Second, the Village officers directed plaintiff to leave the area outside of the bar, and plaintiff understood this to be an order to leave.[15]  Village Facts ¶¶ 78–91, 95–105.  Third, although plaintiff initially complied with the order to leave, he returned to the area of the bar several times.  *Id.* ¶¶ 82–91, 95–105; Trooper Facts ¶ 64.  Lastly, it was objectively reasonable for the officers to infer that plaintiff's continued defiance of their orders created a risk that he would "cause public inconvenience, annoyance or alarm," including a public disturbance.  *See Owen v. City of Buffalo, N.Y.*, 465 F. Supp. 3d 267, 275–76 (W.D.N.Y. 2020).  Thus, because the existence of probable cause is a complete defense, the

---

[15]  "New York courts have held that a refusal to obey such an order to move can be justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order."  *Kass*, 864 F.3d at 212 (cleaned up).  Here, the officers lawfully ordered Cornell to move in furtherance of a legitimate public purpose, namely, to maintain security.

Village defendants are entitled to summary judgment on plaintiff's false arrest and false imprisonment claims.[16] [17]

## V.  __CONCLUSION__

Therefore, it is

ORDERED that

1.  The Trooper defendants' motion for summary judgment (Dkt. No. 83) is DENIED;

2.  The Village defendants' motion for summary judgment (Dkt. No. 84) is GRANTED in part and DENIED in part;

3.  Plaintiff's Denial of Timely and Adequate Medical Care (Count Three), False Arrest (Count Six), and False Imprisonment (Count Seven) claims are DISMISSED; and

---

[16]  It need not be determined whether there was probable cause to arrest Cornell for obstructing governmental administration in violation of § 195.05 or resisting arrest in violation of § 205.30.  *See Marcavage v. City of N.Y.*, 689 F.3d 98, 109 (2d Cir. 2012).

[17] Lastly, the Village defendants assert that Cornell's request for punitive damages should be dismissed. Village Defs.' Mem. at 32.  "In a § 1983 action, punitive damages may be awarded 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Aponte v. Perez*, 75 F.4th 49, 55 (2d Cir. 2023) (cleaned up).  "This is typically a question for the jury to decide."  *Paul v. City of N.Y.*, 2023 WL 3724152, at *13 (S.D.N.Y. May 30, 2023) (citiation omitted).  "Where, as here, a plaintiff has provided sufficient evidence to overcome summary judgment with respect to excessive force, the Court cannot state as a matter of law that the plaintiff is not entitled to punitive damages."  *Id.* (cleaned up).  Accordingly, the Village defendants' motion for summary judgment on punitive damages is denied.

4.  Plaintiff's Excessive Force (Count One), Failure to Intervene (Count Two), Battery (Count Four), and Assault (Count Five) claims remain for trial.

IT IS SO ORDERED.

Dated:  September 13, 2023
      Utica, New York.

David N. Hurd
U.S. District Judge